UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOHN G. LEWIS,

               Plaintiff,

                                     Case No. 23-cv-1110-pp

     v.

CAROLYN W. COLVIN,

               Defendant.

---

**ORDER AFFIRMING FINAL ADMINISTRATIVE DECISION OF THE COMMISSIONER**

---

On August 23, 2023, the plaintiff appealed an administrative law judge's final administrative decision finding that she was not "disabled" as defined by the Social Security Act. Dkt. No. 1. The Social Security Administration's Appeals Council denied review, rendering the administrative law judge's decision the final decision of the Commissioner. The court will affirm the Commissioner's decision.

## I.     Procedural History and the ALJ's Decision

On April 11, 2019, the plaintiff filed a Title II application for disability insurance benefits and a Title XVI application for supplemental security income. Dkt. No. 10-1 at 21. The plaintiff reported an alleged disability onset date of April 21, 2018. Id. The Social Security Administration (SSA) denied the plaintiff's claims on July 24, 2019 and again on reconsideration on February 21, 2020. Id.

On March 11, 2020, the plaintiff filed a request for a hearing before an administrative law judge (ALJ). Id. On September 17, 2020, he appeared at a

telephone hearing, represented by Attorney Adam Kachelski. Id. On October 16, 2020, ALJ Dean Syrjanen issued a decision, concluding that the plaintiff was not "disabled" as defined by the Social Security Act. Id. at 21-30. On December 21, 2020, the appeals counsel denied review; on February 22, 2021, the plaintiff filed an appeal with this district court. Lewis v. Kijakazi, Case No. 21-cv-233, Dkt. No. 1. On October 4, 2021, Magistrate Judge William Duffin granted the parties' joint stipulation and motion to remand for further proceedings. Dkt. No. 10-1 at 751-753; see also Lewis v. Kijakazi, Case No. 21-cv-233, Dkt. No. 22.

After remand, ALJ Syrjanen held another telephone conference on December 7, 2022. Dkt. No. 10-1 at 668. The plaintiff appeared at this telephone conference, represented by Attorney Roger Rustad. Id. Vocational expert (VE) Gail Ryan also was present. Id.

On February 6, 2023, ALJ Syrjanen issued a decision, again finding that the plaintiff was not "disabled" as defined by the Social Security Act. Id. at 675-691. The ALJ found that the plaintiff was forty-two years old on the alleged disability onset date and "ha[d] at least a high school education." Id. at 689. He found that the plaintiff "ha[d] not engaged in substantial gainful activity since April 21, 2018, the alleged onset date." Id. at 678 (citing 20 CFR §§404.1571 et seq.). The ALJ found, based on the VE's testimony, that the plaintiff had had past relevant work as a web designer and student life technology specialist and that the plaintiff was unable to perform any past relevant work. Id. at 682, 688-689 (citing 20 CFR §§404.1565). But based on the VE's testimony, the ALJ concluded that there existed jobs of significant number in the national economy that the plaintiff could perform, including cleaner II, hand packer and routing clerk. Id. at 689.

To be entitled to benefits under the Social Security Act, a claimant must be "aged, blind, or disabled." 42 U.S.C. §1382(a)(1). The Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." Id. at §1382c(a)(3)(A). The impairment must be of "such severity that [the plaintiff] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. at § 1382c(a)(3)(B). In evaluating a claim for disability benefits, administrative law judges (ALJs) follow a five-step, sequential process. Apke v. Saul, 817 Fed. App'x 252, 255 (7th Cir. 2020); Fetting v. Kijakazi, 62 F.4th 332, 336 (7th Cir. 2023).

At step one, the ALJ determined that the plaintiff had not engaged in substantial gainful activity since April 21, 2018, the alleged onset date. Dkt. No. 10-1 at 678. At step two, the ALJ determined that the plaintiff had severe impairments, including depressive disorder, anxiety disorder, autism spectrum disorder and attention deficit hyperactivity disorder (ADHD). Id. The ALJ found that the plaintiff's social anxiety and obsessive-compulsive disorder (OCD) were non-severe. Id. At step three, the ALJ determined that "[t]he severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.11." Id. at 679. The ALJ made the following findings regarding the plaintiff's functioning: (1) "[i]n understanding, remembering or applying information, the claimant has a mild limitation[;]" (2) "[i]n interacting with others, the claimant has a moderate limitation[;]" (3) "[w]ith regard to concentrating, persisting or

3

maintaining pace, the claimant has a moderate limitation[;]" and (4) "[a]s for adapting or managing oneself, the claimant has experienced a moderate limitation." Id. at 679-681. The ALJ reached the following conclusions regarding the plaintiff's residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited to simple, routine, repetitive tasks. The claimant is able to maintain attention, concentration, persistence, and pace for the performance of simple, routine, repetitive tasks for two-hour periods throughout an eight-hour workday. The claimant is limited to jobs involving simple decision-making and simple changes that occur no more than occasionally. The claimant is limited to jobs where tasks can be performed independently and do not involve collaboration or tandem tasks for the performance of work duties. The claimant is limited to occasional interaction with supervisors and coworkers, and no interaction with the general public.

Id. at 681. Based on this residual functional capacity, at step four the ALJ determined that the plaintiff was unable to perform any past relevant work. Id. at 688-689. Finally, at step five, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that the claimant could perform, such as a cleaner II, a hand packer and a routing clerk. Id. at 689-690.

In reaching his conclusions, the ALJ reviewed the plaintiff's testimony and medical records as well as the opinions of various medical, psychological, and vocational experts. The ALJ addressed the opinions and observations of the plaintiff's treating psychiatrist (Dr. Stephen Shopbell), the plaintiff's therapists (Bradford Bordini and Thomas Schuller), the state agency medical consultants (Drs. Tulay Gulsen, Laura Rosch, and Pat Chan, MD), the state

4

agency psychological consultants (Drs. Catherine Bard, Demetri Dres and Frank Orosz), the consultative examining psychologist (Dr. Sandra King) and the neuropsychological evaluator (Dr. Tara Robertson). Id. at 678-688. The ALJ also heard testimony from a vocational expert (Gail Ryan). Id. at 675, 689-690.

Regarding the plaintiff's own testimony, the ALJ recounted that the plaintiff claimed disability due to physical and mental impairments. Id. at 682. The ALJ observed that the plaintiff had asserted that his "alleged impairments affect his ability to talk, remember, complete tasks, concentrate, understand, follow instructions, and get along with others." Id. The ALJ stated that the plaintiff reported that "he experiences fatigue with depression, and often lacks the energy or desire to do anything." Id. The ALJ recounted that the plaintiff "reported difficulty initiating or completing daily activities such as bathing, shopping, and/or household chores." Id. He observed that the plaintiff had testified that "he has good days and bad days, and that on bad days, which occur approximately twice per week, he has trouble getting out of bed, worries about everything, and has problems interacting with other people." Id.

In reviewing the plaintiff's medical records, the ALJ determined that "[t]he [plaintiff]'s medical records reflect that despite his impairments, he has retained reasonable mental function and that his symptoms have generally responded to treatment." Id. at 683. The ALJ first addressed the medical records of Dr. Shopbell (the plaintiff's treating psychiatrist). Id. He described Dr. Shopbell's medical records:

> Relevant to the claimant's alleged disability onset date, February 2018 psychiatric treatment notes indicate that he looked haggard

5

and unkempt but reported that he was doing pretty good and playing a lot of games on a new computer (Exh. B4F/9). The record reflects that he was seen for psychiatric care with Stephen Shopbell, MD, in September 2018; February, April, July, and November 2019; and June and September/October 2020; and January and March 2021 (Exhs. B4F; B5F; B7F; B14F; B20F). The record reflects that when arranging to follow Dr. Shopbell to a new clinic, the claimant reported in September 2021 that he had been stable on his psychiatric medication regimen "for a long time" (Exh. B21F/11). Consistent with this, December 2021 primary care notes indicate that the claimant's mood disorder and insomnia were stable with medication; and his ADHD was controlled with medication (Exh. B22F/13). Review of the claimant's primary care medication lists suggests a consistent psychiatric medication regimen from May 2018 through December 2019 (see Exhs. B1F/35; B11F), at which time it was pared down and remained consistent through September 2022 (Exhs. B16F/2; B18F/40; B24F). The general consistency in psychiatric medication regimen, coupled with the claimant's endorsement of stability in September 2021, suggests adequate long-term symptom management.

When the claimant resumed psychiatric treatment with Dr. Shopbell in January 2022, he was noted to have marked issues with social interaction, low motivation, and fatigue (Exh. B24F). However, his mental status examination in February 2022 was normal; he had unremarkable appearance and hygiene; was appropriate, pleasant, and engaged; with good eye contact, normal speech, "good" mood, and euthymic affect; linear, logical, and well-organized thought process; unremarkable thought content; normal attention/concentration and memory; and good insight and judgment (Exh. B24F/178-180). As noted above, he was continued on his medication regimen. After reporting lethargy and catastrophic thoughts in April 2022, the claimant attended group psychotherapy focused on stress management until early June 2022 (Exh. B24F). The record reflects that he participated in activities and was engaged with the group (see e.g., Exh. B24F/113, 142, 150). Dr. Shopbell noted improvement in anxiety and depression by June 2022; the claimant had a normal mental status examination and no change in medication regimen (Exh. B24F/58-65).

Id.

Next, the ALJ described the plaintiff's history with therapists (Bradford Bordini and Thomas Schuller). Id. at 683-684. The ALJ recounted that "the

record reflects that the [plaintiff] returned to therapy in July 2018 after last being seen in September 2017[,]" and that in July 2018 "[h]e reported feeling isolated, having felt better after visiting with a friend, and expressed a desire to increase social interaction[.]" Id. at 683. He observed that over the next few years, Mr. Bordini's therapy notes documented that the plaintiff generally improved and discussed a desire to decrease his medications. Id. at 683-684. The ALJ observed that, "[n]otably, Mr. Bordini indicated an objective finding of improvement in February 2020, despite the claimant's report of worsening mood[.]" Id. at 684. Although the plaintiff had "reported difficulty dealing with decreased interaction due to the pandemic in spring 2020[,]" the ALJ said that Mr. Bordini's notes show that, "[b]y July 2020, [the plaintiff] was . . . doing well, with stability in mood and anxiety[.]" Id. The ALJ explained that, through the remainder of 2020, Mr. Bordini detailed that the plaintiff "was appropriately dressed with normal mood and affect[,]" and that the plaintiff attended a party one weekend with fifteen to twenty people. Id.

The ALJ described the plaintiff's 2021 therapy notes:

While the claimant reported an increase in symptoms following denial of disability claim in January 2021, he declined medication adjustment and reported doing well at his next visit, with normal mood, affect, and appearance, and working on computer programming (Exh. B18F). By March 2021, the claimant was noted to show great improvements. He had a normal mental status examination; he was neat, clean, and appropriately dressed with normal mood and appropriate affect (Exh. B18F). Therapy notes from April to July 2021 document a focus on behavior modification (diet, exercise) with significant improvement in functioning and follow through. The claimant continued computer programming, was planning for a graduation party, addressing picking/touching habits, showering more regularly, and going camping (Exhs. B19F;

7

B21F). Despite reporting a rough couple of weeks in September 2021, the claimant engaged in a plan for improvement.

Id. The ALJ observed that the plaintiff "sought to reestablish therapy in May 2022, initiating treatment with Thomas Schuller[.]" Id. The ALJ stated that, "[u]pon mental status examination, [the plaintiff] had depressed mood, but normal behavior (calm, cooperative), maintained eye contact, unremarkable appearance, normal thought process/content, normal speech, and fair insight, judgment, memory, concentration, attention[.]" Id. He observed that Mr. Schuller's therapy notes "through September 2022 reflect struggles with motivation at times, but reasonable mental status examinations with some variability in mood and affect[.]" Id.

The ALJ recounted that, beyond regular treatment, the plaintiff's medical records reflected at least two evaluations. Id. at 684-685. First, in July and August 2018 the plaintiff participated in a neuropsychological evaluation conducted by Tara Robertson, PsyD, to clarify his diagnoses. Id. at 684. The ALJ described Dr. Robertson's records:

> At an initial visit, Dr. Robertson observed that the claimant was disheveled, unkempt, and restless with blunted affect and poor judgment. However, he had a friendly, pleasant, and cooperative attitude; good attention, appropriate speech; normal thought content, and good memory (immediate, recent, remote). During testing in August 2018, Dr. Robertson observed the claimant had an apathetic attitude and anxious and depressed affect; however, he rarely showed evidence of being distractible and appeared to have average range intellectual functioning. Dr. Robertson diagnosed the claimant with a major depressive disorder, OCD, a generalized anxiety disorder, a social anxiety disorder, and personality disorders (Exh. B1F).

Id. at 684-685.

8

Second, the ALJ observed that in January 2020, the plaintiff had participated in a consultative psychological examination conducted by Sandra King, PhD. Id. at 685. The ALJ described Dr. King's records:

> Dr. King observed that the claimant appeared anxious and had depressed affect, but was soft-spoken and cooperative, and adequately groomed, despite reports of neglecting personal care. He had normal thought content and logical stream of mental activity. His performance on mental capacity tasks revealed intact recent and remote memory; mildly impaired immediate memory; average general fund of knowledge; adequate concentration with ability to effortlessly perform serial 3 subtraction from 100, correctly spell "world" forward and backward, follow a three-step command, and follow conversation. He demonstrated ability for abstract thinking and mildly simplistic judgment. Dr. King diagnosed the claimant with a major depressive disorder, generalized anxiety disorder, autism spectrum disorder, and OCD.

Id.

After reviewing the plaintiff's medical records, the ALJ observed that the records "document the claimant's history of mental health symptoms" but that, "despite persistent anxiety and intermittent exacerbations in symptoms, the claimant's longitudinal treatment notes reflect general stability/manageability of symptoms with therapy and psychiatric medication management." Id. The ALJ recounted that the plaintiff "did not require urgent or inpatient treatment" and that, "aside from variability in mood and affect, the claimant generally retained reasonable mental status with largely adequate appearance, appropriate interaction, and at least fair memory, attention, and judgment." Id. The ALJ determined that "the overall evidence, including [the plaintiff's] treatment history and mental status examinations, cannot reasonably be accepted as consistent with the claimant's statements about the intensity,

9

persistence, and *degree* of limitations associated his symptoms." Id. (emphasis in original). The ALJ concluded that "[t]he overall evidence does not support a finding of greater mental limitation than accommodated in the residual functional capacity finding herein." Id.

The ALJ observed that "the nature and scope of the claimant's activities, discussed in detail above and coupled with provider observations, suggest greater mental capacity than alleged." Id. He described various activities performed by the plaintiff, including driving to Chicago in the summer of 2018 to pick up a puppy, caring for the puppy, managing his medication, maintaining relationships, attending a gathering with fifteen to twenty people, creating accounts on dating platforms and reporting missing physical contact during the pandemic. Id. at 685-686. The ALJ opined that, "[w]hile these activities do not equate directly to the ability to perform full time work, they demonstrate that, despite experiencing symptoms of his mental impairments, [the plaintiff] has remained able to engage in a number of normal day-to-day activities, many of which involve at least some of the mental abilities and social interactions necessary for obtaining and maintaining employment." Id. at 686. The ALJ concluded that the plaintiff's "ability to engage in these activities conflicts with the extent of his subjective allegations during hearing testimony." Id.

The ALJ addressed various medical opinions and prior administrative medical findings. Id. He began with the prior administrative findings of state

10

agency psychological consultants (Drs. Catherine Bard, Demetri Dres and Frank Orosz). Id. The ALJ generally described these findings:

> Drs. Catherine Bard and Demetri Dres opined in July 2019 and February 2020 that the claimant has no limitation in his ability to understand, remember, and apply information; moderate limitation in his ability to interact with others and concentrate, persist, or maintain pace; and mild limitation in his ability to adapt and manage himself. Dr. Frank Orosz opined in September 2021 that the claimant has mild limitation in his ability to understand, remember, and apply information; moderate limitation in his ability to interact with others and concentrate, persist, or maintain pace; and mild limitation in his ability to adapt and manage himself.

Id. The ALJ found the assessments of the state agency psychological consultants to be "partially persuasive." Id. He generally agreed with the state agency psychological consultants, saying:

> Insofar as they opined that the claimant has no more than mild limitation in the claimant's ability to understand, remember, and apply information; and moderate limitation in the claimant's ability to interact with others; and concentrate, persist, or maintain pace, this is consistent with the overall evidence and appropriately balances the claimant's subjective reports, variability in mood and affect, and intermittent abnormality in appearance (disheveled, unkempt) with his documented response to treatment, longitudinally reasonable mental status examinations (e.g., appropriate appearance and interaction; adequate memory, attention, judgment), and reported activities.

Id. But the ALJ determined that "the balancing of this evidence is more consistent with a finding that the claimant experiences moderate[, as opposed to mild,] limitation in his ability to adapt and manage." Id. The ALJ accommodated these moderate limitations in the residual functional capacity by limiting the plaintiff's potential work to those involving "only simple, routine, tasks; simple decision making; and simple changes that occur no more than occasionally." Id. at 686-687.

11

The ALJ next addressed Dr. King's January 2020 opinion. Id. at 687. The ALJ observed that Dr. King had opined that the plaintiff "is able to understand directions, but that he has moderate to severe difficulties in carrying out instructions; moderate to severe limitations in responding appropriately to supervisors and coworkers; moderately impaired ability to maintain concentration and attention; and moderate to severe difficulties withstanding routine work stress and adapting to change." Id. In discussing Dr. King's opinion, the ALJ observed:

> Dr. King's assessment appears to be based largely on the claimant's subjective reports, as she did not note objective findings as to significant deficits in mental function. Rather, her mental status examination of the claimant revealed overall intact memory, average estimated fund of knowledge, intact concentration, and only mildly impaired judgment and insight. However, the claimant reported that he is severely socially withdrawn, has no friends, and does not leave his house other than when absolutely necessary. As described above, the claimant's reports of social interaction and a variety of activities contradicts his statements to Dr. King.

Id. The ALJ determined that "Dr. King's opinions are of limited persuasiveness, as they are based on a one-time evaluation of the claimant, consider subjective reports that are not consistent with the overall evidence, and are not consistent with her contemporaneous observations." Id.

Finally, the ALJ found Dr. Shopbell's December 2022 opinion to be "minimally persuasive." Id. The ALJ described this opinion:

> Dr. Shopbell indicated that he has treated the claimant every two months for many years, and the record reflects that Dr. Shopbell has treated the claimant throughout the relevant period. Citing a diagnosis of major depressive disorder, Dr. Shopbell opined that the severity of the claimant's impairment meets listing 12.04 and has marked limitation in the claimant's ability to understand, remember, and apply information; concentrate, persist, or maintain

pace; and adapt and manage himself. Dr. Shopbell opined that the claimant would be absent from work or unable to complete a workday more than five days per month and off task more than 30 percent of the workday.

Id. at 687-688. The ALJ explained his reasons for finding Dr. Shopbell's

December 2022 opinion "minimally persuasive":

> Dr. Shopbell's assessment as to marked symptoms and/or limitations in mental function, including in treatment notes, are *not consistent with his observations of the claimant's mental status*, for example in February 2022 that the claimant had unremarkable hygiene; appropriate, pleasant, and engaged interpersonal behavior; good eye contact; normal speech; "good" mood and euthymic affect; linear and logical thought process; no impairment in memory, attention, or concentration; and good judgment (Exh. B24F/179-180). At his most recent documented visit in September 2022, Dr. Shopbell observed that the claimant had a depressed/anxious mood/affect, but was nevertheless alert, motivated, calm, and cooperative, with appropriate eye contact, normal rate of speech, unremarkable motor activity, and future-oriented and goal-directed thought process (Exh. B24F/4). The degree of limitation assessed by Dr. Shopbell, including as to off-task behaviors, is *also not consistent with the claimant's performance on mental capacity tasks at the consultative psychological examination or his presentation during neuropsychological evaluation/testing*, during which he demonstrated adequate fund of knowledge, memory, and concentration, despite reporting anxiety (see Exhs. B1F; B13F). Dr. Shopbell's assessment is *also somewhat internally inconsistent*, for example, indicating that the claimant has significant difficulty understanding and remembering very short and simple instructions, but little difficulty carrying them out; and assessing moderate limitation in social function, while noting that the claimant's ability to engage in public interaction would not interfere with any aspect of a job and that his ability to interact with coworkers and supervisors would preclude performance for only 5 percent of an 8-hour workday.

Id. at 688 (emphasis added). The ALJ concluded that, "while the overall

evidence supports a finding that the [plaintiff] experiences limitations in mental

function due to his impairments, the degree of limitation assessed by Dr.

Shopbell is not consistent with the [the plaintiff]'s mental status examinations, treatment history, or reported activities." Id.

## II.    Standard of Review

The court will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported the decision with substantial evidence. 42 U.S.C. §405(g); Jelinek v. Astrue, 662 F.3d 805, 811 (7th Cir. 2011). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind could accept as adequate to support a conclusion." Schaaf v. Astrue, 602 F.3d 869, 874 (7th Cir. 2010) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). A decision denying benefits need not discuss every piece of evidence but remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. Jelinek, 662 F.3d at 811. The ALJ must provide an "accurate and logical bridge" from the evidence to the conclusion. Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ must follow the Social Security Administration's (SSA) rulings and regulations in making a determination. Failure to do so requires reversal unless the error is harmless. See Prochaska v. Barnhart, 454 F.3d 731, 736–37 (7th Cir. 2006). The court does not substitute its judgment for that of the Commissioner by "reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." Estok v. Apfel, 152 F.3d 636, 638 (7th Cir. 1998). Judicial review is limited to the rationales offered by the ALJ. Shauger v. Astrue, 675 F.3d 690, 697 (7th Cir. 2012) (citing SEC v. Chenery Corp., 318 U.S. 80, 93–95 (1943)).

14

## III.  Discussion

The plaintiff raises two primary arguments on appeal. First, he argues that the ALJ's "findings regarding Dr. Shopbell were flawed" and "unsupported by substantial evidence[.]" Dkt. No. 15 at 22-29. Second, he contends that the ALJ "improperly failed to consider [the plaintiff]'s Obsessive Compulsive Disorder (OCD) and was further unable to assess [the plaintiff]'s symptoms and evidence under that lens consistent with SSR 16-3p and case law." Id. at 29-37.

### A.  Dr. Shopbell's Opinion

#### 1.  *The Parties' Arguments*

In his initial brief, the plaintiff argued that "the ALJ's assessment of Dr. Shopbell was unsupported by substantial evidence." Dkt. No. 15 at 23. He contended that "[t]he ALJ did not evaluate Dr. Shopbell's report vis-à-vis his findings during his initial evaluation on January 18, 2022[,]" and that "[t]he narrative assessment from June 2022, renewed the marked issues from January." Id. (citing Dkt. No. 10-1 at 2598). The plaintiff quoted the following narrative from Dr. Shopbell's records for the plaintiff's June 2022 appointment:

> Patient follows up for routine care in regards to longitudinal issues with depression, anxiety, and disability. The patient is quite upbeat and positive about the benefit she got from the DBT related virtual group where he feels that he has been able to apply much more regularly practices of mindfulness including breathing techniques which he feels does help clearly to manage his daily symptoms. He has had an increasing awareness of the pattern of anticipatory anxiety which historically would lead to more avoidance. He knows now that the reinforcement avoidance leads to increased anxiety as well as more depression and loneliness. He has been making more attempts to be increasingly social. He is still planning to relocate to the Appleton area to increases social connections. He is still working

15

on every 2 weeks mental health counseling hopefully to give himself more perspective and support. He is using the clonazepam quite selectively at times not using at all, many days using just a single dose where he finds now that he has developed more sensitivity to it and less tolerance. He has maintain compliance on his Trintellix, trazodone, aripiprazole which appear to be benefiting him without adverse side effects. He continues utilizing his psychostimulant daily again without affects on his sleep, appetite or anxiety. Mood, thought, perception, behavior are all generally much more intact. Depression and anxiety symptoms are at a much lower baseline. Still no evidence of any hypomania, mania, mixed states, or psychosis. Sleep, appetite energy are generally intact. Friends have noticed that he has regained his sense of humor.

Id. at 23-24 (quoting Dkt. No. 10-1 at 2591). The plaintiff stated that, in September 2022, Dr. Shopbell "noted an increase in [the plaintiff]'s anxiety" and observed that the plaintiff "'continues to have a difficult time motivating himself.'" Id. at 24 (quoting Dkt. No. 10-1 at 2536-2537). He asserted that "[t]he ALJ . . . failed to note that Dr. Shopbell's findings on this December 2022 report were consistent with his initial evaluation from January 2022." Id. at 25.

Next, the plaintiff challenged the ALJ's determination that Dr. Shopbell's December 2022 assessment was not consistent with the plaintiff's performance at the consultative psychological examination or his presentation during neuropsychological evaluation/testing. Id. Regarding the consultative psychological examination, the plaintiff argued that "[t]he ALJ's layman's conclusion that Dr. King's opinion undercut Dr. Shopbell's opinion lacks validity and corroboration[,]" and that, "[i]n fact, Dr. Shopbell marked many of the same categories as Dr. King in assessing off-task behavior such as maintaining attention and concentration, performing at a consistent pace, and responding appropriately to changes in the workplace." Id. (citing Dkt. No. 10-1

16

at 2754-2755). As for the neuropsychological evaluation/testing, the plaintiff contended that the ALJ "cit[ed] specific evidence" related to Dr. Robertson's findings but that he "failed to articulate how this contradicted Dr. Shopbell's opinion." Id. at 25-26. The plaintiff challenged the ALJ's determination that Dr. Shopbell's assessment was internally inconsistent, saying that "[t]he ALJ's criticism is a red hearing [sic] trying to assert and [sic] inconsistency that was not in the record. Id. at 26-27. (citing Dkt. No. 10-1 at 2754). The plaintiff summarized his argument regarding Dr. Shopbell:

> In this case, the ALJ relied on his own assertions of findings which contradicted Dr. Shopbell's. He misstated evidence such as asserting inconsistency of the CE and Mental evaluation with Dr. Shopbell's opinion. The ALJ asserted improvement and cherry-picked the evidence, ignoring the consistent finding of Lewis's severe depression and anxiety, even when he showed some limited level of improvement. Accordingly, the ALJ failed to fully and adequately build an accurate and logical bridge between the evidence and the supportability finding.

Id. at 28-29.

The defendant responded that the plaintiff's arguments challenging the ALJ's evaluation of Dr. Shopbell's opinion are meritless. Dkt. No. 29 at 11. She addressed the plaintiff's concerns regarding "the ALJ['s] fail[ure] to consider Dr. Shopbell's notations in January and June 2022 treatment records that that Plaintiff had 'marked issues with social interaction' and 'low motivation.'" Id. (quoting Dkt. No. 15 at 16). The defendant emphasized that "an 'ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning.'" Id. (quoting Warnell v. O'Malley, 97 F.4th 1050, 1053 (7th Cir.

2024)). The defendant contended that "these statements were not Dr.
Shopbell's *objective* mental status examination findings and therefore do not
detract from the ALJ's finding that Dr. Shopbell's extreme opinions were
inconsistent with his objective examination findings." Id. (citing Dkt. No. 10-1
at 688). She observed that "the January 2022 treatment note did not document
any objective mental status examination findings[,]" and that "Dr. Shopbell's
June 2022 mental status examination documented uniformly normal objective
findings." Id. (citing Dkt. No. 10-1 at 2595-2596, 2730). The defendant argued
that "[a] reasonable mind could find this objective medical evidence did not
support Dr. Shopbell's extreme opinions." Id. (citing Pavlicek v. Saul, 994 F.3d
777, 782 (7th Cir. 2021)).

The defendant contested the plaintiff's argument that "the ALJ
erroneously found Dr. Shopbell's opinions inconsistent with consultative
examining psychologist Dr. King's report," maintaining that the plaintiff "recites
Dr. King's opinion—not her objective mental status examination findings." Id.
The defendant observed that "Dr. King's mental status examination
documented largely normal findings: the ability to perform all concentration
tasks without error, overall intact memory, average fund of knowledge, intact
concentration, cooperative behavior, appropriate attire and grooming, and only
mildly impaired judgment and insight." Id. at 11-12 (citing Dkt. No. 10-1 at
687). She contended that, "[c]ontrary to Plaintiff's assertions, the ALJ was not
obligated to compare Dr. Shopbell's and Dr. King's opinions in evaluating
consistency." Id. at 12 (citing Harrison v. Comm'r, SSA, Case No. 22-4108,

18

2024 WL 1856553, at *3-*4 (10th Cir. Apr. 29, 2024); <u>Fetting v. Kijakazi</u>, Case No. 20-C-1268, 2022 WL 873172, at *6 (E.D. Wis. Mar. 24, 2022)). <u>Id.</u> The defendant said that, despite the plaintiff's contention that the ALJ failed to articulate how Dr. Shopbell's opinion contradicted the neuropsychological evaluation/testing, the ALJ had satisfied the minimal articulation standard here. <u>Id.</u> Finally, the defendant argued that, "[w]hile Plaintiff purports to challenge the ALJ's articulation, he merely disagrees with the ALJ's weighing of the conflicting evidence in evaluating Dr. Shopbell's opinions." <u>Id.</u>

The plaintiff replies by reiterating that the ALJ should have treated Dr. Shopbell's opinion differently. Dkt. No. 32 at 10. The plaintiff argues that, "[w]hile there are problems with the opinion of Dr. Shopbell, some of which the ALJ and the Commissioner have laid out, it is hard to see how the idea that Mr. Lewis would have some or considerable time off-task is so unsupported when, as Lewis pointed out, he cannot make it through a complete counseling session without having to count the ceiling tiles." <u>Id.</u> (citing Dkt. No. 10-1 at 1203).[1] The plaintiff contends that, "[w]hile the [the defendant] has provided an accurate sound-bite from <u>Warnell</u>, the reasoning behind that case does not excuse the ALJ from fully considering the record, which was not done here." <u>Id.</u> at 11 (citing <u>Warnell v. O'Malley</u>, 97 F.4th 1050, 1053 (7th Cir. 2024)). He ends by asserting that, "[b]ecause ALJ Syrjanen did not analyze the consistency of

_____

[1] The plaintiff cites "R1196" for his claim regarding "count[ing] the ceiling tiles." Dkt. No. 32 at 10. This citation is to Dr. Robertson's August 2018 evaluation, so it is unclear why the plaintiff is using this citation to defend Dr. Shopbell's December 2022 opinion.

Dr. Shopbell's opinion against the full range of Lewis's symptoms, the ALJ did not comply with the regulatory requirements, and a remand is required." Id. (citing 20 C.F.R. §404.1520c(b)(2)).

        2.   *Analysis*

Before 2017, SSA regulations required ALJs and reviewing courts to give a treating physician's opinion controlling weight. But as of March 27, 2017, the "treating physician rule" was eliminated. Under the current regulations, an ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion. 20 C.F.R. §404.1520c(a). Rather, the ALJ determines how persuasive the medical opinions are, with the most important factors being "supportability" and "consistency." 20 C.F.R. §404.1520c(b)(2). Courts "do not review medical opinions independently but rather review the ALJ's weighing of those opinions for substantial evidence, and [] only overturn that weighing if no reasonable mind could accept the ALJ's conclusion." Grotts v. Kijakazi, 27 F.4th 1273, 1277 (7th Cir. 2022).

The ALJ stated reasonable grounds for concluding that Dr. Shopbell's December 2022 assessment was "minimally persuasive." The ALJ explained how he found that the December 2022 assessment was not consistent with Dr. Shopbell's own medical records, was not consistent with the results of the consultative psychological examination or the neuropsychological evaluation/testing and, arguably, was internally inconsistent. Dkt. No. 10-1 at 687-688. The ALJ's weighing of Dr. Shopbell's December 2022 was supported by substantial evidence.

20

Starting with Dr. Shopbell's own records, the ALJ reasonably found that the December 2022 assessment described markedly more intense symptoms and/or limitations in the plaintiff's mental functioning than Dr. Shopbell's records for 2022. Id. at 688. The plaintiff argues that the ALJ should have evaluated the December 2022 assessment "vis-à-vis [Dr. Shopbell's] findings during his initial evaluation on January 18, 2022[,]" dkt. no. 15 at 23, but evaluating Dr. Shopbell's opinion only with regard to the plaintiff's condition in January 2022 ignores the improvements Dr. Shopbell noted during the plaintiff's subsequent visits.[2] For example, in June 2022, Dr. Shopbell recorded that the plaintiff's "[m]ood, thought, perception, behavior are all generally much more intact." Dkt. No. 10-1 at 2591. The plaintiff correctly observes that

---

[2] As discussed earlier, the ALJ described the course of Dr. Shopbell's 2022 treatment notes as follows:

> When the claimant resumed psychiatric treatment with Dr. Shopbell in January 2022, he was noted to have marked issues with social interaction, low motivation, and fatigue (Exh. B24F). However, his mental status examination in February 2022 was normal; he had unremarkable appearance and hygiene; was appropriate, pleasant, and engaged; with good eye contact, normal speech, "good" mood, and euthymic affect; linear, logical, and well-organized thought process; unremarkable thought content; normal attention/concentration and memory; and good insight and judgment (Exh. B24F/178-180). As noted above, he was continued on his medication regimen. After reporting lethargy and catastrophic thoughts in April 2022, the claimant attended group psychotherapy focused on stress management until early June 2022 (Exh. B24F). The record reflects that he participated in activities and was engaged with the group (see e.g., Exh. B24F/113, 142, 150). Dr. Shopbell noted improvement in anxiety and depression by June 2022; the claimant had a normal mental status examination and no change in medication regimen (Exh. B24F/58-65).

Dkt. No. 10-1 at 683.

"[i]n September[] 2022, Dr. Shopbell noted an increase in [the plaintiff]'s anxiety." Dkt. No. 15 at 24. But Dr. Shopbell's notes from that September 2022 visit also stated that the plaintiff had presented with positive characteristics:

> John was alert and oriented x4. Patient presented motivated. Patient presented as calm and cooperative. Mood appeared depressed and anxious with congruent affect. Eye contact was appropriate. Speech was normal in rate, tone, and volume. Motor activity was unremarkable. Thought process was future oriented and goal directed. Patient denied any suicidal ideation, homicidal ideation, or self-harm ideation.

Dkt. No. 10-1 at 2530. Because Dr. Shopbell's own records generally show the plaintiff's impairments improving over 2022, the ALJ reasonably interpreted the marked impairments described in Dr. Shopbell's December 2022 assessment to be inconsistent with this trend.

Next, the ALJ reasonably observed that "[t]he degree of limitation assessed by Dr. Shopbell, including as to off-task behaviors, is [] not consistent with the claimant's performance on mental capacity tasks at the consultative psychological examination or his presentation during neuropsychological evaluation/testing[.]" Id. at 688. Dr. Shopbell's assessment classified the plaintiff's mental functioning in the highest category of impairment (Category IV) for five out of eight factors listed under "mental abilities, sustained concentration, and memory."[3] Id. at 2754. A reasonable person could conclude

---

[3] Dr. Shopbell's assessment describes the differences between the various "Categories" of impairment as follows:

> Category I - Does not preclude performance of any aspect of the job.
> Category II - Precludes performance for 5% of an 8-hour workday.
> Category III - Precludes performance for 10% of an 8-hour workday.

22

that the severity of Dr. Shopbell's assessment does not align with the findings from the evaluations conducted by Dr. Robertson or Dr. King. For example—as the ALJ stated—"[d]uring testing in August 2018, Dr. Robertson observed the claimant had an apathetic attitude and anxious and depressed affect; however, *he rarely showed evidence of being distractible and appeared to have average range intellectual functioning.*" Id. at 684 (emphasis added). During Dr. King's evaluation, the plaintiff's "performance on mental capacity tasks revealed intact recent and remote memory; mildly impaired immediate memory; average general fund of knowledge; *adequate concentration with ability to effortlessly perform serial 3 subtraction from 100, correctly spell 'world' forward and backward, follow a three-step command, and follow conversation.*" Id. at 685 (emphasis added). The ALJ reasonably interpreted the marked impairments described in Dr. Shopbell's December 2022 assessment as inconsistent with the results of the consultative psychological examination and the neuropsychological evaluation/testing.

Finally, the ALJ reasonably found that Dr. Shopbell's December 2022 assessment was "somewhat internally inconsistent." As examples for this finding, the ALJ recounted that the assessment

> indicat[ed] that the claimant has significant difficulty understanding and remembering very short and simple instructions, but little difficulty carrying them out; and assess[ed] moderate limitation in social function, while noting that the claimant's ability to engage in public interaction would not interfere with any aspect of a job and

---

Category IV - Precludes performance for 15% or more of an 8-hour workday.

Dkt. No. 10-1 at 2753.

that his ability to interact with coworkers and supervisors would preclude performance for only 5 percent of an 8-hour workday.

Dkt. No. 10-1 at 688.

Dr. Shopbell's assessment *was* internally inconsistent. Dr. Shopbell classified the plaintiff at the highest category of impairment (Category IV) for "understand[ing] and remember[ing] very short and simple instruction[,]" yet classified the plaintiff at the lowest category of impairment (Category I) for "carry[ing] out very short and simple instructions[.]" Id. at 2754. Dr. Shopbell "assess[ed] moderate limitation in social function," but marked three out of the five factors listed under "social interaction" at the lowest category of impairment (Category I) and the remaining two factors at Category II. Id. at 2755. Given these inconsistencies, it was reasonable for the ALJ to conclude that Dr. Shopbell's December 2022 assessment was "somewhat internally consistent."

The ALJ supported the weight he assigned Dr. Shopbell's December 2022 assessment with substantial evidence. This is not an appropriate ground for remand.

B.    The Plaintiff's Obsessive-Compulsive Disorder (OCD)

    1.    *The Parties' Arguments*

In his initial brief, the plaintiff argued that the ALJ "improperly failed to consider [the plaintiff]'s Obsessive Compulsive Disorder (OCD) and was further unable to assess [the plaintiff]'s symptoms and evidence under that lens consistent with SSR 16-3p and case law." Dkt. No 15 at 29. The plaintiff contended that "OCD changes the evaluation of [the plaintiff]'s symptoms and

24

associated limitations in the ability to remember, use, and apply information and the ability to concentrate, persist, and maintain pace." Id. at 31. The plaintiff described the impact of his OCD:

> Lewis reports that obsessive/compulsive thoughts occupy 3 hours per day. [R382.] Lewis's symptoms were not well controlled. Id. The record includes reports of rumination. R511, 1105, 1113, 1174, 1175. Additionally, Lewis's ruminative behavior is observed by his providers. R1682, 1689, 1696, 2589. Indeed, Lewis's ruminations even interrupted his counseling sessions with obsessive counting. R1196. Lewis was noted to have hoarding behaviors as well. R450-451, 1183, 1191. Indeed, Lewis's hoarding prevented him from using his bed. R1035. Similarly, Lewis is noted to have Trichotillomania behavior 1-2 times daily where he pulls his hair out. R1192.

Id. at 32.

The plaintiff stated that, "[w]hile ALJ Syrjanen mentions these symptoms, he describes them as allegations rather than observations endorsed by a treating provider as causing disruptions in Lewis's life, contrary to case law." Id. (citing Throw v. Kijakazi, Case No. 21-CV-170-JPK, 2022 WL 4592022, at *21 (N.D. Ind. Dec. Sept. 30, 2022)). The plaintiff asserted that, "[b]ecause ALJ Syrjanen did not consider the relevant evidence outlined in the regulation, namely Lewis's inability to function without interference from his ruminations, he impermissibly cherry-picked the record requiring remand." Id. at 32-33.

The plaintiff argued that "the ALJ fails to build a logical bridge where the ALJ concludes, 'there was evidence that supported [Lewis's] disability, but [he] rejected them without explaining why.'" Id. at 33 (quoting House v. Saul, Case No. 20-cv-518-jdp, 2021 WL 1345625, at *3 (W.D. Wis. 2021)). The plaintiff claimed that "ALJ Syrjanen either failed to analyze the functional limitations

offered by the state agency or consider the evidence specific to Lewis's condition." Id. at 34. He said, "ALJ Syrjanen had two opinions that provided functional limitations for Lewis: the September 22, 2021, opinion of Dr. Orosz, and the December 16, 2022, opinion of Dr. Shopbell[;]  [h]owever, ALJ Syrjanen did not discuss any limitations Dr. Orosz offers." Id. (citing Dkt. No. 10-1 at 686-687). The plaintiff contended that "ALJ Syrjanen failed to assess Dr. King's opinion properly and accurately under the regulations." Id. at 35. He contested the ALJ's determination that Dr. King's opinion was "based on a one-time evaluation of the claimant, considered subjective reports, and inconsistent with her observations." Id. at 36 (citing Dkt. No. 10-1 at 687). The plaintiff asserted that "Dr. King supported her opinion with a notation of the severity and diagnosis of OCD rather than the subjective reports cited by ALJ Syrjanen[,]" and that "Dr. King benefited from a record review in addition to her examination, meaning that her opinions were based on more than one examination, contrary to the ALJ's conclusion." Id. at 36-37 (citing Dkt. No. 10-1 at 687). The plaintiff ended this way:

> Moreover, as discussed earlier Lewis displayed OCD symptoms that would disrupt his ability to carry out instructions. In specific, there are multiple reports of rumination. R511, 1105, 1113, 1174, 1175. His mental status examinations confirm Lewis's ruminative behavior. R1682, 1689, 1696, 2589. Indeed, Lewis's ruminations interrupted his counseling sessions with obsessive counting. R1196. Lewis was noted to have hoarding behaviors as well. R450-451, 1183, 1191. Accordingly, the evidence is consistent with Dr. King's opinion and is supported by the noted severity and diagnosis.

Id. at 37.

The defendant responded that substantial evidence supports the ALJ's assessment of the plaintiff's mental work-related abilities. Dkt. No. 29 at 3. The defendant asserted that, "[w]hile the ALJ did not find OCD to be a severe impairment at step two, the ALJ considered evidence that Plaintiff was diagnosed with OCD by two examining psychologists and reported symptoms of racing thoughts, worry, rumination, irritability, and hair pulling in evaluating his RFC." Id. at 4 (citing Dkt. No. 10-1 at 678, 682, 684-685). She recounted that the ALJ "pointed out that Plaintiff's longitudinal treatment records reflected generally stable mental health symptoms with therapy and psychiatric medication management, and he had not required inpatient psychiatric treatment," and that the ALJ "highlighted that, aside from variability in mood and affect, Plaintiff demonstrated largely normal mental status examination findings, including appropriate interaction and at least fair memory, attention, and judgment." Id. (citing Dkt. No. 10-1 at 685). The defendant contended, "This evidence supports the ALJ's finding that, although Plaintiff had some mental limitations stemming from his severe and non-severe mental impairments, he was still capable of performing simple work with reduced social interactions." Id. at 4-5. The defendant also emphasized that "Plaintiff fails to identify additional specific restrictions the ALJ should have included in the RFC to account for his OCD." Id. at 5. She argued that "[t]he mere diagnosis of an impairment, alone, is inadequate to demonstrate a work-related limitation[,]" and that "the Seventh Circuit has explained, a claimant 'bears the burden of showing that she has impairments that affected her ability to work'

27

and 'pointing to various diagnoses and complaints and saying that they might hinder [a claimant] is insufficient to establish the existence of a functional limitation.'" Id. (quoting Richards v. Berryhill, 743 F. App'x 26, 30 (7th Cir. 2018)).

The defendant argued that substantial evidence supports the ALJ's evaluation of the medical opinion evidence. Id. She observes that, "[u]nder the regulations, an ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion. . . . Rather, the ALJ determines how persuasive the medical opinions are, with the most important factors being 'supportability' and 'consistency.'" Id. at 5-6 (citing 20 C.F.R. §404.1520c(a), (b)(2)). The defendant discussed the ALJ's assessment of several medical opinions. Id. at 6-12. Starting with Dr. King, the defendant said, "Plaintiff asserts that Dr. King supported her opinion that Plaintiff would have moderate to severe difficulties carrying out instructions with a citation to Plaintiff's OCD diagnosis. . . . But Plaintiff does not dispute that Dr. King's opinion was unsupported by her normal mental status examination findings— including her observation that Plaintiff performed the Serial 3s task from 100 'effortlessly and without error.'" Id. at 7 (citing Dkt. No. 15 at 29-30; Dkt. No. 10-1 at 687). The defendant asserted that "reasonable minds could find Dr. King's reference to Plaintiff's OCD diagnosis—considered alongside her normal clinical examination findings—inadequately supported her opinion." Id. She also argued that "Plaintiff overstates Dr. King's review[,]" and that, "[i]n fact,

Dr. King indicated that she reviewed a single psychotherapy treatment record dated July 16, 2019." Id. (citing Dkt. No. 10-1 at 547).

Turning to Dr. Orosz, the defendant disputed the plaintiff's assertion that "the ALJ 'did not discuss any limitations Dr. Orosz offers.'" Id. at 8 (quoting Dkt. No. 15 at 34). The defendant listed several of Dr. Orosz's findings that the ALJ had discussed, before stating that the ALJ had "explained that in balancing the evidence, he found Plaintiff *more* limited than the state agency consultants in adaptation, [] and thus restricted Plaintiff not only to work involving simple, routine tasks but also simple decision-making and simple work changes that occur no more than occasionally[.]" Id. (emphasis in original) (citing Dkt. No. 10-1 at 686-687). The defendant summarized, "While the ALJ may not have addressed every one of Dr. Orosz's statements about his functional abilities, the ALJ ultimately imposed an RFC assessment consistent with—and in some respects more restrictive than—Dr. Orosz's assessment." Id. at 9.

Finally, regarding Dr. Shopbell (specifically his opinions about the plaintiff's OCD), the defendant observed that Dr. Shopbell's December 2022 opinion did not state that the plaintiff was diagnosed with OCD. Id. at 9-10 (citing Dkt. No. 10-1 at 2749-2758). The defendant concluded by explaining why the ALJ had not erred in finding Dr. Shopbell's opinion minimally persuasive; the court has discussed that argument. Id. at 10-12.

In reply, the plaintiff again argues that "ALJ Syrjanen improperly failed to consider Lewis's Obsessive Compulsive Disorder (OCD) and was further

29

unable to assess Lewis's symptoms and evidence under that lens consistent with SSR 16-3P and case law." Dkt. No. 32 at 4. The plaintiff asserts that the ALJ's "Residual Functional Capacity (RFC) assessment must be tied to the symptoms caused by Lewis's impairments," and that "[t]he connection between the symptoms and the evidence or 'logical bridge' is essential to ensuring that ALJ Syrjanen's decision is supported by substantial evidence." Id. at 4-5 (citing 20 C.F.R. §404.1545; SSR 96-8p; Thomas v. Kijakazi, Case No. 22-cv-650-slc, 2023 WL 8921819 (W.D. Wis. December 27, 2023); Moon v. Colvin, 763 F.3d 718, 721 (7th Cir. 2014); Deborah M. v. Saul, 994 F.3d 785, 788 (7th Cir. 2021)).

The plaintiff contests the defendant's various references to the ALJ's decision. Id. at 5-7. Broadly, the plaintiff says that "OCD and its effects are not expected to affect the areas that the ALJ focused on and are instead characterized by ruminative thought and compulsive behaviors that disrupt Mr. Lewis's ability to function[,]" so "it is relevant to the proper consideration that ALJ Syrjanen downplayed or omitted the objective findings of reflective thought and acts of compulsion[.]" Id. at 6. In contesting the defendant's claim that the plaintiff "did not identify additional restrictions the ALJ should have included in the RFC to account for his OCD[,]" the plaintiff contends that he argued for "a greater limitation in following instructions based on the opinion of Dr. King: 'moderate to severe difficulties in carrying out instructions due to severe OCD.'" Id. at 7 (quoting Dkt. No. 10-1 at 549).

Finally, the plaintiff argues that, "[c]ontrary to the [defendant]'s assertions, ALJ Syrjanen did not adequately evaluate the medical opinions in the file in light of Lewis's OCD." Id. at 8. Starting with Dr. King, the plaintiff challenges the defendant's argument that Dr. King's examination lacked objective support. Id. The plaintiff says that the defendant's argument is flawed in two ways:

> First, the Commissioner points to Lewis's performance of the serial three's test. However, as the heading containing serial 3's test points out, serial three's test is a test of concentration and not the ability to follow directions. Second, as Lewis argued, Dr. King was providing an assessment beyond what she objectively and subjectively observed by tying her opinion to a specific diagnosis, which, as demonstrated above, the ALJ did not adequately consider.

Id. The plaintiff complains of the defendant "fault[ing] [the plaintiff] for not explaining how the one treatment note supported more weight given to Dr. King's assessment of [the plaintiff]'s function[,]" because "[t]he obvious explanation is that it directly undermines the ALJ's assertion that Dr. King's opinions were based largely on [the plaintiff's] subjective symptoms."[4] Id. The plaintiff contends that "it shows that ALJ Syrjanen did not carefully assess the opinion of Dr. King as the challenged limitation was tied to a specific diagnosis." Id. He asserts that "neither ALJ Syrjanen nor the Commissioner showed that the treatment of Dr. King's opinion was appropriate," and that,

---

[4] Later in this paragraph, the plaintiff says, "the treatment note contains the phrase, 'Pt. noted he will get stuck in rumination on negative thought.' R511." Dkt. No. 32 at 9. The "treatment note" that the plaintiff references appears to be a treatment note drafted by Mr. Bordidni in relation to a July 16, 2019 appointment. Dkt. No. 10-1 at 517-518.

"[i]ndeed, . . . [the plaintiff's] ruminations and compulsions associated with his OCD would be quite destructive." Id. at 9.

Turning to Dr. Orosz, the plaintiff challenges the defendant's argument "that the ALJ discussed the mild and moderate findings of the state agency and . . . that such a discussion is sufficient." Id. The plaintiff says that the defendant's "contention is inconsistent with the directive of the appeals counsel." Id. at 9-10 (quoting Dkt. No. 10-1 at 760). Specifically, the plaintiff contends that "the opinion of Dr. Orsz contains a limitation to no more than 3 step instructions" and that "[i]t is unclear how the ALJ's RFC accommodates this more specific limitation." Id. at 10. The plaintiff concludes that the ALJ did not sufficiently weigh the opinion of Dr. Orosz.

Finally, regarding Dr. Shopbell, the plaintiff reiterated the arguments from his initial brief, arguing that "[t]he ALJ simply didn't account for the effects of Lewis's OCD when analyzing the record" and that, "[w]hile there are problems with the opinion of Dr. Shopbell . . . it is hard to see how the idea that Mr. Lewis would have some or considerable time off-task is so unsupported when . . . he cannot make it through a complete counseling session without having to count the ceiling tiles." Id. (citing Dkt. No. 10-1 at 1203).

2.    *Analysis*

Again, an ALJ is not required to lay out how each of a claimant's diagnoses may lead to particular impairments before examining how the impairments resulting from that diagnosis may limit a claimant's work

performance. The court reviews "the ALJ's decision to determine whether it reflects an adequate logical bridge *from the evidence to the conclusions.*" Gedatus v. Saul, 994 F.3d 893, 900 (7th Cir. 2021) (emphasis added); see also Shauger v. Astrue, 675 F.3d 690, 695–96 (7th Cir. 2012) (holding that a reviewing court "is confined to the rationales offered by the ALJ and asks whether the ALJ's decision is supported by substantial evidence" (internal citations omitted)). "Although an ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." Terry v. Astrue, 580 F.3d 471, 477 (7th Cir. 2009). A claimant "bears the burden of showing that [he] has impairments that affected [his] ability to work" and "pointing to various diagnoses and complaints and saying that they might hinder [a claimant] is insufficient to establish the existence of a functional limitation." Richards v. Berryhill, 743 Fed. App'x 26, 30 (7th Cir. 2018); see also Kramer v. Saul, Case No. 19-C-1558, 2021 WL 973936, at *5 (E.D. Wis. Mar. 16, 2021) ("[A]lthough the ALJ did not explicitly reference Plaintiff's bipolar diagnosis, she thoroughly discussed all of Plaintiff's mental symptoms when formulating the RFC."); Niemer v. Saul, Case No. 1:19-cv-627, 2020 WL 563943, at *3 (E.D. Wis. Feb. 5, 2020) ("So long as the ALJ properly considered all of [the claimant's] alleged disabling symptoms in formulating the RFC, it matters little which impairment the symptoms stemmed from.").

The ALJ's decision builds an adequate logical bridge between the evidence related to the impairments/symptoms the plaintiff says are associated with his OCD and the ALJ's conclusions. The plaintiff broadly contends that

33

the ALJ failed to factor in his OCD when evaluating (1) the plaintiff's ability to remember, use and apply information and (2) the plaintiff's ability to concentrate, persist and maintain pace. Dkt. No. 15 at 31. The court concedes that the ALJ mentioned the OCD diagnosis only three times in his decision,[5] but the ALJ thoroughly explained how the plaintiff's medical records, his reported activities and the expert's opinions led the ALJ to determine that the plaintiff exhibited mild limitations in understanding, remembering or applying information and to determine that the plaintiff exhibited moderate limitations in concentrating, persisting or maintaining pace. Dkt. No 10-1 at 679-688. The ALJ supported his findings related to the above-mentioned abilities, and his assessment of the expert opinions, with substantial evidence.

Because the parties spend much of their briefing discussing the various expert witnesses, the court first will address how the experts' opinions affected the ALJ's decision. The ALJ reasonably explained why he aligned his determinations with the assessments of the state agency psychological consultants, including Dr. Orosz. Dkt. No. 10-1 at 686-687. He explained that the state agency psychological consultant's assessments generally were consistent with the overall evidence. Id. As a sample, the ALJ provided the following discussion regarding the state agency psychological consultant's assessments:

---

[5] The first mention occurs when the ALJ broadly noted that "the claimant's medical records reflect various mental health diagnoses, including social anxiety and obsessive compulsive disorder (OCD)[.]" Dkt. No. 10-1 at 678. The two other mentions occurred when the ALJ observed that both Dr. Robertson and Dr. King had diagnosed the plaintiff with OCD. Id. at 684-685.

The evidence supports this level of ability. As discussed above, neuropsychological testing and performance on mental capacity tasks at a consultative psychological examination revealed the claimant demonstrates adequate memory and concentration, even when expressing feelings of anxiety. The consultative psychological examiner noted the claimant performed serial 3s from 100 "effortlessly and without error" and the neuropsychological examiner indicated that the claimant rarely showed rarely showed evidence of being distractible (Exhs. B1F; B13F). As discussed above, the record reflects a reasonable range of activity with consistent care of his dog and engagement in treatment without reference to noncompliance or appointment attendance issues.

Id. at 687. This is only one of several occasions where the ALJ made the "logical bridge" between the evidence and his conclusion to treat the state agency psychological consultant's assessments as "partially persuasive.

Turning to Dr. King's assessment, the ALJ reasonably explained why he found Dr. King's assessment to be "of limited persuasiveness[.]" Id. He accurately observed that "Dr. King's *assessment* appears to be based largely on the claimant's subjective reports, as she *did not note objective findings* as to significant deficits in mental function." Id. The ALJ contrasted Dr. King's assessment with the fact that the results of the mental capacity tasks Dr. King had administered "revealed intact recent and remote memory; mildly impaired immediate memory; average general fund of knowledge; adequate concentration with ability to effortlessly perform serial 3 subtraction from 100, correctly spell 'world' forward and backward, follow a three-step command, and follow conversation." Id. at 685. The ALJ reasonably observed that the plaintiff's performance on these mental capacity tasks was not consistent with the level of impairment described in Dr. King's assessment. Because the ALJ logically and accurately described this disparity between the objective metrics and Dr.

35

King's assessment, he supported his assessment of Dr. King's assessment with substantial evidence.

More broadly, the ALJ sufficiently explained how he factored in the impairments that the plaintiff attributed to his OCD. Generally, the plaintiff asserts that his OCD causes ruminative thought and compulsive behaviors, which interfere "with [his] ability to follow instructions meaningfully." Dkt. No. 32 at 6-7. At several points in his decision, the ALJ addressed the plaintiff's ability to follow instructions. Most notably, the ALJ stated:

> In understanding, remembering or applying information, the claimant has a mild limitation. *The claimant has reported that his impairments affect his ability to remember, understand, and follow instructions* (Exhs. B3E; B7E; B37E). However, in Function Reports submitted in 2019 and August 2021, he reported that, while he requires reminders to tend to personal care due to lack of motivation, he manages his own medication, cares for his dog with assistance at times from his parents, does his own laundry, drives a vehicle, shops by computer, and is able to handle money (count change, pay bills, use a savings/checking account) (Exhs. B3E; B7E; B37E). Further, treatment notes document the claimant's use of the Internet and computer for organizing paperwork (Exh. B13F; B16F). *Finally, the claimant's treating and examining providers have not noted any deficits in this domain.* For example, July 2018 neuropsychological evaluation noted good memory and average fund of knowledge (Exh. B1F). In sum, while the claimant has limitations in this domain, the evidence of record does not support a finding that these are more than mild.

Dkt. No. 10-1 at 679-680. The ALJ later recounted various objective findings and expert opinions which support his finding of a "mild limitation." For example, the ALJ explained that during Dr. King's evaluation, the plaintiff's "performance on mental capacity tasks revealed intact recent and remote memory; mildly impaired immediate memory; average general fund of

knowledge; *adequate concentration with ability to effortlessly perform serial 3 subtraction from 100, correctly spell 'world' forward and backward, follow a three-step command, and follow conversation.*" Id. at 685 (emphasis added). Dr. Shopbell's December 2022 assessment reported that the plaintiff's ability to "carry out very short and simple instructions" "[d]oes not preclude performance of any aspect of the job." Id. at 2746-2747. The ALJ accommodated the plaintiff's "mild limitation" with those abilities related to following instructions by prescribing limitations in the residual functional capacity, including limiting the plaintiff "to simple, routine, repetitive tasks." Id. at 681. The ALJ created a "logical and accurate bridge" between the evidence related to the plaintiff's OCD symptoms and the ALJ's conclusions.

In summary, although the ALJ did not specifically link the plaintiff's OCD diagnosis to his impairments, his decision reflects an adequate logical bridge between the evidence related to the impairments/symptoms the plaintiff says are associated with his OCD and the ALJ's conclusions.

## IV. Conclusion

The court **ORDERS** that the decision of the Commissioner is **AFFIRMED**. The clerk will enter judgment accordingly.

The court **ORDERS** that this case is **DISMISSED**.

Dated in Milwaukee, Wisconsin this 30th day of December, 2024.

BY THE COURT:

_____

HON. PAMELA PEPPER
**Chief United States District Judge**

37